IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MILLARD PERDUE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-268-TMH |
| | ) | [WO] |
| | ) | |
| ANNETTE CAIN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Millard Perdue ["Perdue"], a former county inmate, challenges the medical treatment provided to him during his prior incarceration in the Covington County Jail.  *Complaint - Doc. No. 1* at 3.[1]   Specifically, Perdue initially complains that the jail's medical personnel failed to provide him necessary medication for his numerous conditions, including arthritis, acid reflux, sleep apnea, high blood pressure, back pain, kidney disease and nerve/anxiety problems.  *Id*.  Perdue subsequently alleges that the defendants denied him treatment for dental issues.  *Doc. No. 30* at 5.

The defendants filed a special report, a supplement to the report and supporting

---

[1] Perdue entered the Covington County Jail on February 28, 2012 and was released from the jail on July 10, 2012.

evidentiary materials addressing Perdue's claims for relief.   In these documents, the defendants adamantly deny they acted with deliberate indifference to Perdue's medical and dental needs.   In addition, the defendants assert that the complaint is due to be dismissed because Perdue failed to properly exhaust an administrative remedy available to him at the Covington County Jail.   *Defendants' Special Report - Doc. No. 25* at 14-16; *see also Defendants' Supplemental Special Report - Doc. No. 39* at 8.   The defendants base their exhaustion defense on Perdue's failure to properly exhaust the grievance procedure at the jail with respect to the claims presently pending before this court.

The court provided Perdue an opportunity to file a response to the defendants' initial report.   *June 7, 2012 Order - Doc. No. 26*.   In this order, Perdue was advised to "specifically address the defendants' assertions that: (i) His claims are due to be dismissed because he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) . . . prior to filing this federal civil action . . . ; and (ii) The claims contained in the complaint fail to establish a violation of his constitutional rights." *Id*. at 1-2. The court also informed Perdue that the defendants' report(s) may, at any time, be treated as a dispositive motion, including a motion for summary judgment under Federal Rule of Civil Procedure 56, and provided a detailed explanation to Perdue regarding the proper manner in which to respond to a dispositive motion.   *Id.* at 3-4.   In his responses to this order, Perdue makes conflicting statements regarding his knowledge of the grievance procedure.

Initially, Perdue indicates he knew of the jail's grievance procedure and, in fact, utilized the procedure. *Plaintiff's Response - Doc. No. 27* at 1-2. ("I did file proper grievance[s]" by submitting grievances on "sick call forms or request forms due to they were out of grievance forms . . . . [These] forms . . . are filled out in a grievance manner. The fact that I used other forms than a grievance form was because that was the only alternative provided . . . anytime I asked for a grievance form."). Perdue, however, next suggests that he had no knowledge of the applicable grievance procedure because he did not receive a rule book nor had he been given a copy of the grievance procedure. *Supplemental Response - Doc. No. 30* at 5. Finally, Perdue asserts that at some time during his confinement and "after the law suits started going in" correctional personnel posted the grievance procedure. *Second Supplemental Response - Doc. No. 41* at 3.

Pursuant to the orders entered herein, the court deems it appropriate to treat the defendants' reports as a motion to dismiss with respect to Perdue's failure to exhaust an administrative remedy. *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988) ("[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead it 'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'"). Alternatively, the court finds that the reports should be construed as a motion for summary judgment regarding the merits of the

plaintiff's claims for relief.  Thus, this case is now pending on the defendants' dispositive motions.  Upon consideration of these motions, the evidentiary materials filed in support thereof and the plaintiff's responses to the reports, the court concludes that the defendants' motions are due to be granted.

## II.  EXHAUSTION OF REMEDIES

### A.  Standard of Review

"When deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true.  'If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.' *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir.2008) (citing *Bryant*, 530 F.3d at 1373-74). If the complaint is not subject to dismissal at this step, then the court should make 'specific findings in order to resolve the disputed factual issues related to exhaustion.' *Id.* (citing *Bryant*, 530 F.3d at 1373-74, 1376)." *Myles v. Miami-Dade Cnty. Corr. and Rehab. Dep't*, 476 F. App'x 364, 366 (11th Cir. 2012).

In his initial response, Perdue asserts that he initiated the grievance procedure by filing request forms in the nature of grievances seeking medical treatment for his various conditions.  Perdue maintains that the jail administrator advised him to address these requests to the medical staff.  It is undisputed that after receiving a response to these

grievances Perdue did not file an appeal to the Sheriff.  Although Perdue subsequently suggests that he had no knowledge or understanding of the grievance procedure, his initial response belies this assertion.  Perdue presents no explanation for the discrepancy of the statement contained in his initial response and the statements set forth in his supplemental responses.  This court may therefore disregard Perdue's subsequent statements filed solely for the purpose of opposing a dispositive motion by the defendants to the extent these statements directly contradict a statement contained in the first response.  *See Van T. Junkins and Assoc. v. U. S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984); *see also McCormick v. Ft. Lauderdale*, 333 F.3d 1234,1240 n.7 (11th Cir. 2003) (contradictory affidavit submitted solely to defeat summary judgment may be disregarded by the court). The court therefore finds that Perdue had knowledge of the grievance procedure as he admittedly sought grievance forms and completed request forms in the nature of grievances in an effort to have the responsible parties respond to his complaints.  In addition, it is undisputed that Perdue did not file an appeal with the Sheriff of any response provided to his purported grievances.

### B.  Dismissal for Failure to Exhaust

Perdue challenges the medical treatment he received while confined in the Covington County Jail.  Perdue alleges he submitted request forms as grievances regarding the claims presented in the instant complaint.  The records submitted by the parties

demonstrate that Perdue filed such forms with jail and medical personnel.  However, the record likewise establishes that Perdue did not appeal the responses he received to these grievances.  This case is therefore subject to dismissal because Perdue failed to properly exhaust the administrative remedy provided at the Covington County Jail prior to filing this complaint as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

The Prison Litigation Reform Act compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  "Congress has provided in § 1997(e)(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. 81 (2006).  Moreover, "the PLRA exhaustion

requirement requires ***proper exhaustion***."  *Woodford*, 548 U.S. at 93 (emphasis added).
"Proper exhaustion demands compliance with an agency's deadlines and other critical
procedural rules [as a precondition to filing suit in federal court] because no adjudicative
system can function effectively without imposing some orderly structure on the courts of
its proceedings . . . .  Construing § 1997e(a) to require proper exhaustion . . . fits with the
general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to
bring suit in federal court once administrative remedies are no longer available] would turn
that provision into a largely useless appendage."  548 U.S. at 90-91, 93.  The Court
reasoned that because proper exhaustion of administrative remedies is necessary an inmate
cannot "satisfy the Prison Litigation Reform Act's exhaustion requirement . . . by filing an
untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by
effectively bypassing the administrative process simply by waiting until the grievance
procedure is no longer available to her.  548 U.S. at 83-84; *Johnson v. Meadows*, 418 F.3d
1152, 1157 (11th Cir. 2005) (inmate who files an untimely grievance or simply spurns the
administrative process until it is no longer available fails to satisfy the exhaustion
requirement of the PLRA).  "The only facts pertinent to determining whether a prisoner has
satisfied the PLRA's exhaustion requirement are those that existed when he filed his
original complaint."  *Smith v. Terry*, 491 F. App'x  81, 83 (11th Cir. 2012) (per curiam).

The record in this case establishes that the Covington County Jail provides an

administrative remedy for inmate complaints in the form of an inmate grievance procedure. *Defendants' Exhibit A (Policy and Procedure Directive for Inmate Grievances) - Doc. No. 25-4* at 5.   The grievance procedure allows an inmate to submit grievances to the Jail Administrator with respect to matters/conditions occurring at the Covington County Jail. The relevant portion of the grievance procedure provides that "[i]nmates must file a completed grievance form within 7 days from the date of the occurrence upon which the grievance is based.  Completed grievance forms will be delivered to the Jail Administrator who will respond to the grievance." *Id*.  Upon receipt of a response to the grievance, the inmate may appeal "[t]he decision . . . to the Sheriff in writing within seventy-two (72) hours of the receipt of the grievance decision." *Id.*

The record before the court demonstrates that Perdue failed to properly exhaust an administrative remedy available to him which is a precondition to proceeding in this court on his claims.  Specifically, Perdue failed to appeal the responses to his grievances as permitted by the grievance procedure in effect at the Covington County Jail.   The administrative remedy provided by the defendants with respect to appeal of the grievances is no longer available to Perdue, i.e., his claims are time barred from administrative review. Moreover, Perdue has presented no circumstances which justify his failure to exhaust the jail's grievance procedure.  Under these circumstances, the court finds that dismissal with prejudice is appropriate.  *Bryant*, 530 F.3d at 1375 n.1 (acknowledging that where

administrative remedies are clearly time barred or otherwise infeasible inmate's failure to exhaust may "correctly result in a dismissal with prejudice."); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995) ("Without the prospect of a dismissal with prejudice, a prisoner could evade the exhaustion requirement by filing no administrative grievance or by intentionally filing an untimely one, thereby foreclosing administrative remedies and gaining access to a federal forum without exhausting administrative remedies."); *Johnson*, 418 F.3d at 1157 (same); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) (footnotes omitted) (indicating inmate's "federal lawsuits . . . properly dismissed with prejudice" where previously available "administrative remedies have become unavailable after prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust."). Thus, to the extent the defendants seek dismissal of this case for plaintiff's failure to exhaust an administrative remedy, the court concludes that such action is warranted.

## III.  DISCUSSION ON MERITS OF CLAIMS

### A.  Absolute Immunity

To the extent Perdue sues the defendants in their official capacities, they are immune from monetary damages.[2]  Official capacity lawsuits are "in all respects other than name,

---

[2] Under all facets of Alabama law, a county sheriff, his jailers, and medical staff act as state officers "when supervising [or treating] inmates and otherwise operating the county jails." *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1289 (11th Cir. 1998); *see* Ala. Const. Art. V, § 112 (designates sheriff and, by extension, his staff as members of State's executive department); *see also Parker v. Amerson*, 519 So. 2d 442 (Ala. 1987) (county sheriff is executive officer of the State).

. . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Summary Judgment - Individual Capacity Claims

Even had Perdue exhausted his available administrative remedies or demonstrated that each step of the grievance procedure was not available to him, the court finds that he is entitled to no relief as the defendants did not act with deliberate indifference to his

medical or dental needs.

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

---

[3]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [jail] authorities [and medical personnel].  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for summary judgment, Perdue is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477

12

U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Id*. at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-77 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the

existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational

14

trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Perdue fails to demonstrate a requisite genuine dispute of material fact in order to preclude summary judgment.

### C.  Deliberate Indifference[4]

Perdue contends that the defendants failed to provide him appropriate medication for his various ailments and denied him dental treatment.  To prevail on a claim concerning an alleged denial of adequate medical/dental treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the

---

[4]The record does not establish whether Perdue was a pre-detainee or convicted inmate during the period of time that the alleged constitutional violations occurred.  Regardless of Perdue's status in the jail either as a pre-trial detainee or convicted inmate, the applicable standard of review remains the same. *Bell v. Wolfish*, 441 U.S. 520 (1979); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) (citations omitted) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners . . . .  However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."); *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986) (For analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.); *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing that "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal

to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form
> the basis of a claim for deliberate indifference is well settled. *See Estelle v.*
> *Gamble*, 429 U.S. 97, 105-07, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976);
> *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir.1995). Instead, something
> more must be shown. Evidence must support a conclusion that . . . harmful
> acts [of jail officials or medical personnel] were intentional or reckless. *See*
> *Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S. Ct. 1970, 1977-79, 128 L.
> Ed. 2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996)
> (stating that deliberate indifference is equivalent of recklessly disregarding
> substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating
> that plaintiff must show more than mere negligence to assert an Eighth
> Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40
> F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has
> defined "deliberate indifference" as requiring more than mere negligence and
> has adopted a "subjective recklessness" standard from criminal law); *Qian*
> *v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference"
> is synonym for intentional or reckless conduct, and that "reckless" conduct
> describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to properly establish "deliberate indifference to [a] serious medical need .

. . , Plaintiff[] must show:  (1) a serious medical need; (2) the defendants' deliberate

indifference to that need; and (3) causation between that indifference and the plaintiff's

injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). When seeking

relief based on deliberate indifference, an inmate is required to establish "an objectively

serious need, an objectively insufficient response to that need, subjective awareness of

facts signaling the need and an actual inference of required action from those facts."

*Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendants] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291; *Mandel*, 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97 S. Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support

18

> a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033
> (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258

(citation and internal quotations omitted) (To show deliberate indifference to a serious

medical need, a plaintiff must demonstrate that [the] defendants' response to the need was

more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even

medical malpractice actionable under state law.").  Moreover, "as *Estelle* teaches, whether

government actors should have employed additional diagnostic techniques or forms of

treatment 'is a classic example of a matter for medical judgment' and therefore not an

appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d

at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion

as to how a condition should be treated does not give rise to a constitutional violation.");

*Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires

a different mode of medical treatment does not amount to deliberate indifference violative

of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison

medical personnel do not violate the Eighth Amendment simply because their opinions

concerning medical treatment conflict with that of the inmate-patient).  Self-serving

statements by a plaintiff do not create a question of fact in the face of contradictory,

contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530 (11th

Cir. 1990).

In addition to the above described requisite elements, when an inmate's deliberate indifference claim alleges a delay in treatment, this court must also consider "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007). In a case alleging that delay in medical treatment shows deliberate indifference, the plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment [on his medical condition] to succeed." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187-88 (11th Cir. 1994), *overruled in part on other grounds*, *Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002); *Mann*, 588 F.3d at 1307.

    1.  <u>Liability of Jail Personnel - Preston Hughes and Dennis Meeks.</u>

It is clear from the complaint that Perdue seeks to hold Jail Administrator Hughes and Sheriff Meeks liable for their failure to intervene regarding the medical treatment provided to him by the jail's health care professionals. The claims made against Hughes and Meeks entitle Perdue to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical

20

judgments made by medical professionals responsible for prisoner care. *See, e.g.*, *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.*, 198 Fed. Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

To the extent Perdue seeks relief from Hughes and Meeks due to their positions as jail administrator and sheriff, assuming *arguendo* they exerted some authority over the manner in which those persons responsible for the provision of medical care rendered such care, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability] . . . . *Robertson v. Sichel*, 127 U.S. 507, 515-16, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035

(11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, liability for medical/dental treatment provided to Perdue could attach to defendants Hughes and Meeks only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Perdue, however, has presented no evidence, nor can the court countenance the existence of any evidence, which would create a genuine issue of disputed fact with respect to the allegations of deliberate indifference by Hughes and Meeks. The record is devoid of evidence indicating that these defendants personally participated in or had any involvement, direct or otherwise, with the manner in which to render treatment to Perdue; rather, it is undisputed that Hughes and Meeks did not participate in the decisions

regarding provision of medical/dental treatment to Perdue. The evidentiary materials before the court likewise demonstrate that the jail's medical personnel made the challenged decisions in accordance with their professional judgment after assessment of all relevant factors.

In light of the foregoing, Hughes and Meeks can be held liable for decisions of medical personnel only if their actions bear a causal relationship to the purported violations of Perdue's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of Hughes and Meeks, Perdue must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [these defendants] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so . . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Hughes and Meeks] directed the [jail's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Perdue has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Hughes and Meeks directed medical personnel to act unlawfully or knew that they

23

would act/acted unlawfully and failed to stop such action.  In addition, Perdue has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Hughes and Meeks failed to take corrective action; instead, the medical records indicate that Perdue had access to treatment throughout his confinement in the Covington County Jail and, in fact, received treatment for his conditions from medical personnel, i.e., the jail's medical staff conducted routine checks of Perdue's blood pressure, monitored his blood sugar level, conducted routine examinations/evaluations upon receipt of sick call requests, prescribed several medications in an effort to treat his numerous complaints and scheduled Perdue an appointment with a free-world dentist.  Finally, the undisputed evidentiary materials submitted by the defendants demonstrate that the challenged treatment did not occur pursuant to a policy enacted by either Hughes or Meeks. Thus, the requisite causal connection does not exist in this case and liability does not attach to these defendants under the custom or policy standard as such is not warranted.  *Cf. Emp't Div. v. Smith*, 494 U.S. 872, 877 (1990); *Turner v. Safely*, 482 U.S. 78 (1987).  Summary judgment is therefore due to be granted in favor of defendants Hughes and Meeks on the deliberate indifference claims lodged against them.

   2.  <u>The Medical Defendants - Dr. McWhorter, Nurse Williams and Nurse Cain</u>.

   Perdue asserts that the jail's medical personnel acted with deliberate indifference to his numerous medical conditions by failing to provide him with necessary medication.

24

Perdue further complains that these defendants ignored his requests for dental treatment. The defendants adamantly deny they acted with deliberate indifference to Perdue's medical and/or dental needs.

The evidentiary materials filed by the defendants address the allegations made by Perdue. A thorough review of these documents demonstrates that the affidavits submitted by the medical defendants describing the treatment provided to Perdue are corroborated by the objective medical records compiled contemporaneously with such treatment. Dr. McWhorter describes the medical treatment provided to Perdue from the time of his initial placement in the jail until March 31, 2012, the treatment relevant to the claims presented in the initial complaint, as follows:

> The plaintiff was booked into the Covington County Jail on February 28, 2012. On February 29, 2012, Dianne Williams, LPN completed a medical staff receiving screening form on the plaintiff, where the plaintiff [advised of] a history of diabetes, high blood pressure, kidney problems, sleep issues, arthritis, and chronic back pain. Plaintiff indicated that he was taking muscle relaxers, Lisinopril and Metformin. On examination, the plaintiff had a broken left upper wisdom tooth and his vital signs were normal. Nurse Williams noted that the plaintiff brought pill bottles that had been filed on January 27, 2012, which were empty. . . .
>
> After intake, Nurse Williams noted that the plaintiff would receive Metformin 1000 mg. twice a day to treat the plaintiff's diabetes per my protocol order. I also gave a verbal order for the plaintiff to receive Glipizide 10 mg. twice a day to treat the plaintiff's diabetes. . . . The plaintiff's blood sugar [during the intake screening] was greater than 480. Nurse Williams administered Humulin regular 15 units and started the plaintiff on his medications. Nurse Williams noted that she would monitor the plaintiff's blood pressure, which currently read 118/80. The plaintiff reported that he had not taken his blood pressure medications in a month.

Nurse Williams also noted on the master problem list that the plaintiff [suffered from] chronic problems of diabetes and a history of hypertension.

On February 29, 2012, the plaintiff signed a diabetic control agreement and blood pressure control agreement, agreeing to cooperate with staff so that his blood sugar and blood pressure could be [regularly] monitored.

On February 29, 2012, I entered an Order that the plaintiff's blood pressure be checked every day for three days and then weekly for four weeks and then every month if medications were started.

On March 2, 2012, Nurse Williams noted that, per my protocol order, the plaintiff's blood sugar would be checked twice a day and as needed for five days and then every week.  Also, pursuant to my protocol order, Nurse Williams noted that the plaintiff would receive Humulin regular per sliding scale twice a day and as needed.

On March 5, 2012, the plaintiff completed an inmate request form, requesting that he be put on work release and noting that he felt his sugar would be better if he was working as opposed to being in the jail.  Captain Hughes responded to this request, noting that he would consider the request but that [the work release positions] were full at the time.

On March 7, 2012, I ordered that the plaintiff receive Humulin 70/30 15 units every morning and five units every evening.

On March 8, 2012, the plaintiff completed an inmate request form [addressed to jail personnel], asking to be taken out to the dentist because he claimed to have one tooth with a whole side off and two more loose teeth. Captain Hughes responded to this request, noting that the plaintiff needed to address this request to the medical staff.

On March 11, 2012, Nurse Cain completed a history and physical form on the plaintiff.   She noted that the plaintiff stated that he had prior mental health counseling and problems with vision, hearing, nervous disorder, his teeth, hypertension, diabetes, kidney disease, muscle problems and joint problems.  Nurse Cain also noted that the plaintiff had a history of arthritis in his neck, prior left shoulder surgery, lumbar and bulging discs, weak kidneys, hypertension and diabetes.  On examination, the plaintiff's vital signs were normal and he had multiple [pre-existing] cavities and/or broken teeth.  Nurse Cain filled out a chronic disease flow sheet for his diabetes, noting that his current medications were Metformin, Glipizide and Humulin Regular, as needed, and that the plaintiff was educated about the disease, medical management, nutrition, smoking use and exercise.  Nurse

26

Cain also asked the plaintiff to sign a medical release/authorization so that we could receive records from Dr. Gaynard, who the plaintiff indicated was his family physician.

On March 12, 2012, the plaintiff completed an inmate request form, stating that he needed to be on all of his medications that his doctor on the outside had prescribed him, but most important, he needed to be on his kidney medication.  Again, Captain Hughes instructed him to address this complaint with medical.

On March 13, 2012, the plaintiff completed an inmate request form [addressed to the "Nurse"], stating that he needed to be back on all of his medications and that he needed his kidney medication badly.  He indicated on the request form that the jail had  his doctors' names and phone numbers and that the longer he went without his kidney medication, the worse they would get.  Nurse Cain responded to this request form on March 14, 2012, noting that the plaintiff had failed to provide medical with [valid] names and numbers of the plaintiff's doctors and we would obtain medical records on the plaintiff once the plaintiff had provided same.

On March 15, 2012, Nurse Cain noted on the authorization for release of medical information that she had been unable to find any listing for Dr. Gaynard and she notified the plaintiff of same.

On March 18, 2012, the plaintiff completed an inmate request form [again to the "Nurse"] stating that he had bad teeth and that some of his teeth needed pulling.  On March 19, 2012, Nurse Cain responded to this inmate request form, stating that the plaintiff's medical records were reviewed by me and orders entered by me.  For any new complaints, the plaintiff was advised to complete a sick call request form, which [as of June 6, 2012] the plaintiff had yet to do.

Also on March 18, 2012, the plaintiff completed another inmate request form [addressed to the "Nurse"], stating that his back had slipped a disc between his shoulder blades and that he had been hurting for five days.  On March 19, 2012, Nurse Cain responded to this request form, noting that the plaintiff's medical records were reviewed and that the staff would follow any orders entered by me.

On March 22, 2012, the plaintiff completed an inmate sick call slip, stating that he had sleeping [aids] and muscle relaxers up front and that his back was out and that he was hurting really bad.  On March 23, 2012, Nurse Williams saw the plaintiff for these complaints and completed a clinical pathway form for him, noting that the plaintiff had left shoulder and neck

pain.  In response to these complaints, I ordered ibuprofen 400 mg. twice a day for seven days to treat the plaintiff's pain.

On March 26, 2012, the plaintiff completed an inmate request form [directed to the "Nurse"], complaining about some of his medical charges. In response, the plaintiff was brought to medical by Correction Officer Smith and Nurse Cain reviewed his current co-pay charges with him and he voiced his understanding.

On March 28, 2012, the plaintiff was scheduled to see me.  However the plaintiff refused to see me and signed a refusal of medical treatment and release of responsibility form.

Also, on March 28, 2012, the plaintiff completed an inmate request form [to the attention of the "Nurse"], complaining that he did not understand why the nurse or the doctor would not give him all of his medications.  On March 29, 2012, the plaintiff was brought to the medical area per Correction Officer Smith.  Nurse Cain discussed with the plaintiff the inability to locate the plaintiff's physician's phone number to get [his] medical records.  The plaintiff informed Nurse Cain that he would have his family help obtain his physician's phone number so that the medical staff could attempt to obtain medical records.  Nurse Cain then reviewed the medications that the plaintiff was currently receiving with him.

The plaintiff's blood pressure and blood sugar were checked pursuant to my orders on a regular basis and a blood pressure record form and blood sugar flow sheet were completed on the plaintiff.

On March 28, 2012, I entered an order for Lisinopril 20 mg. every day to treat the plaintiff's high blood pressure, as his blood pressure had been slightly elevated at 160/90 during the staff's last check of it.

The nursing staff complied with all of my orders regarding the plaintiff.

I prescribed medication to treat the plaintiff's diabetes and high blood pressure [and also medication to address his complaints of pain], and that medication was administered to the plaintiff in compliance with my orders. In my professional judgment, the plaintiff was not exhibiting symptoms of any other condition that would necessitate the ordering of additional medication.  Though the plaintiff has requested additional medication that was prescribed to him outside the jail, he has failed to provide the contact information for the physician who he claims prescribed this medication.  As such, it is impossible for the medical staff to verify the plaintiff's prior diagnoses and medication.  In my medical opinion, the plaintiff has not gone

28

without any medication that he needs [during his confinement] at the Covington County Jail.

Based upon my treatment of the plaintiff and review of his medical records, it is my opinion that all treatment provided to the plaintiff by myself and the SHP staff at the Covington County Jail was appropriate and within the standard of care.  On no occasion was the plaintiff ever denied [necessary] medical care . . . .

*Defendants' Exhibit 2 to the Special Report (Aff. of Dr. Millard McWhorter) - Doc. No. 25-2* at 3-9; *see also Defendants' Exhibit 1 to the Special Report (Aff. of Dianne Williams) - Doc. No. 25-1* at 2-8 (same); *Defendants' Exhibit 5 to the Special Report (Aff. of Annette Cain) - Doc. No. 25-5* at 3-8 (same); *Defendants' Exhibit A to the Special Report (Medical Records Attached to Aff. of Annette Cain) - Doc. No. 25-5* at 10-42.  Furthermore, in response to a request for additional medications submitted by Perdue on June 5, 2012, a member of the medical staff advised Perdue that his charts had been reviewed and Perdue was asked to sign another authorization for release of medical records from a source other than Dr. Graynard.  *Exhibit 1 to the Plaintiff's Response - Doc. No. 27-1* at 5.

In response to the claim presented by Perdue regarding dental treatment, *Doc. No. 30* at 5, the defendants filed a supplemental special report and supporting evidentiary materials, including pertinent affidavits and relevant medical records.  *Defendants' Supplemental Special Report - Docs. No. 39* and *39-1 thru 39-4*.  The supplemental affidavit filed by Nurse Cain most fully addresses the issue of dental treatment.  Her affidavit, in pertinent part, reads as follows:

29

On March 8, 2012, the plaintiff completed an inmate request form, asking to be taken out to the dentist because he claimed to have one tooth with a whole side off and two more loose teeth. Captain Hughes responded to this request, noting that the plaintiff needed to address this request to the medical staff. From March 8, 2012 to March 18, 2012, the plaintiff completed no sick call slips regarding dental care and did not address this complaint with the medical staff in any way [despite having access to the staff].

On March 18, 2012, the plaintiff completed an inmate request form [addressed to the "Nurse"] stating that he had bad teeth and that some of his teeth needed pulling. On March 19, 2012, I responded to this inmate request form, stating that the plaintiff's medical records were reviewed by Dr. McWhorter and orders were entered by Dr. McWhorter. For any new complaints, the plaintiff was advised to complete a sick call form, which the plaintiff had yet to do. The plaintiff did not complain of any pain or any symptom related to his teeth; he merely provided his opinion that some of his teeth needed pulling and he had "bad teeth."

From March 18, 2012 to May 14, 2012, [despite being advised to file a sick call request and having the opportunity to do so,] the plaintiff completed no sick call slips and [did not present any] complaints related to his teeth.

On May 14, 2012, the plaintiff completed a sick call slip, complaining that his "tooth Saturday broke and now its cutting into my jaw and tounge (sp)." On May 17, 2012, the plaintiff was seen by Nurse Williams, who completed a clinical pathway form on the plaintiff, noting that he was having pain in his lower left molar of six days duration and that he had some swelling and redness. In response to the plaintiff's complaints, Dr. McWhorter ordered Amoxil 500 Mg, one tablet every morning and three tablets every evening for ten days to address the redness and swelling. Dr. McWhorter also ordered Ibuprofen 600 mg. twice a day for seven days to treat the plaintiff's pain. The plaintiff was also placed on the dental list to be seen by a dentist. Thereafter, a dental appointment was scheduled [for the plaintiff]. For security reasons, inmates are not told when and where outside appointments are scheduled.

From May 17, 2012 to June 16, 2012, the plaintiff completed no sick call slips and had no complaints related to his teeth.

On June 16, 2012, the plaintiff completed an inmate request form, asking how much longer it would be before he would see a dentist, saying it

was his bottom left teeth and a loose one on the right side. On June 18, 2012, nursing staff responded to this request, informing the plaintiff that he did have a dental appointment scheduled but that the staff could not tell the plaintiff the date of the appointment due to jail policy.

On June 23, 2012 the plaintiff completed a sick call slip, complaining of a runny nose, headache, coughing and hurting all over. However, when Nurse Williams responded to this sick call on June 24, 2012, the plaintiff stated that those symptoms had subsided and he needed to be seen for tooth pain. Also on June 24, 2012, the plaintiff completed an inmate request form, again wanting to know when he would be seen by a dentist.

On June 25, 2012, Pam Gorum, LPN saw the plaintiff in response to his sick call and inmate request, noting that he complained of left lower tooth pain. Nurse Gorum observed no redness or swelling [during her examination of the plaintiff]. Nurse Gorum explained to the plaintiff that a dental appointment had been made for him, but that she could not inform him of the date and time [of this appointment] due to [the jail's security] policy. In response to the plaintiff's complaints of pain, Dr. McWhorter ordered Ibuprofen 800 mg. twice a day for five days.

On July 6, 2012, the plaintiff completed an inmate request form, complaining that his teeth "were killing him." On July 8, 2012, Dr. McWhorter ordered Naprosyn for five days to treat the plaintiff's pain, and Nurse Gorum noted this order on the plaintiff's inmate request form and further noted that a dental appointment had been made for the plaintiff.

On July 10, 2012, the plaintiff was released from the jail. Upon learning of the plaintiff's release, Nurse Williams, on July 11, 2012, returned the plaintiff's phone call and informed the plaintiff that he needed to come by the jail and pick up his medications. Also, as the plaintiff was now no longer incarcerated, Nurse Williams told the plaintiff that he had a dental appointment scheduled with Dr. Burkhardt in Andalusia on July 12, 2012 and provided the plaintiff with the time of the appointment along with the name and number of Dr. Burkhardt's office.

On July 17, 2012, Nurse Gorum entered a note that she was notified by Dr. Burkhardt's office that the plaintiff was a "no show" for his dental appointment on July 12, 2012.

Based upon my treatment of the plaintiff and review of his medical records, it is my opinion that all treatment provided to the plaintiff for his dental complaints by myself and the SHP staff at the Covington County Jail was appropriate and within the standard of care. On no occasion was the

plaintiff ever denied medical care. . . .   The plaintiff was never denied any
treatment for his dental complaints.

*Defendants' Exhibit 3 to the Supplemental Special Report (Aff. of Annette Cain) - Doc. No.*
*39-3 at 2-5; see also Defendants' Exhibit 1 to the Supplemental Special Report (Aff. of Dr.*
*Millard McWhorter) - Doc. No. 39-1 at 1-4 (same); Defendants' Exhibit 2 to the*
*Supplemental Special Report (Aff. of Dianne Williams) - Doc. No. 39-2 at 1-5 (same);*
*Defendants' Exhibit A to the Supplemental Special Report (Medical Records Attached to*
*Aff. of Annette Cain) - Doc. No. 39-3 at 7-50.*   In his supplemental affidavit, Dr.
McWhorter further advises that in his "medical opinion, the plaintiff is not suffering from
any type of emergency condition related to his teeth.  When redness and swelling were
observed on the plaintiff's lower left molar on May 17, 2012, I ordered Amoxil and the
redness and swelling subsided.  When the plaintiff complained of pain on May 14 and June
24, 2012, I ordered Ibuprofen [and Narposyn] to address those complaints.  The staff also
made the requested dental appointment for the plaintiff."  *Defendants' Exhibit 1 to the*
*Supplemental Special Report (Aff. of Dr. Millard McWhorter) - Doc. No. 39-1 at 4.*
Moreover, the medical records indicate that Perdue suffered "bad teeth" well prior to his
confinement in the Covington County Jail and this condition remained relatively unchanged
during his approximate four-month period of confinement in the jail.

Under the circumstances of this case, the court concludes that the course of
treatment undertaken by the medical defendants in addressing Perdue's health issues did

not violate his constitutional rights.  The care Perdue received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness."  *Harris*, 941 F.2d at 1505.  The allegations presented by Perdue simply fail to establish deliberate indifference by the medical defendants.  *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, any allegation that health care personnel did not diligently pursue alternative means of treating a condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical or dental treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Perdue received treatment while incarcerated in the Covington County Jail.  Specifically, medical personnel performed regular checks of his blood pressure and blood sugar, routinely evaluated the overall state of his health, conducted physical examinations when warranted, attempted to obtain relevant information from

Perdue regarding his medical history, including the name(s) and contact information for his free-world physicians, and prescribed various medications to him in accordance with their professional judgment.   Moreover, Perdue has failed to present any evidence which indicates that the medical defendants knew that the manner in which they provided treatment created a substantial risk to Perdue's health and that with this knowledge consciously disregarded such risk.   The record is therefore devoid of evidence, significantly probative or otherwise, showing that the medical defendants acted with deliberate indifference to Perdue's medical or dental needs.   Consequently, summary judgment is due to be granted in favor of Dr. Millard McWhorter, Nurse Annette Cain and Nurse Dianne Williams.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  To the extent the defendants seek dismissal of this case due to the plaintiff's failure to properly exhaust an administrative remedy previously available to him at the Covington County Jail prior to filing this case, the defendants' motion to dismiss be GRANTED.

2.  To the extent the defendants seek summary judgment on the merits of the claims presented to this court, the defendants' motion for summary judgment be GRANTED.

3.  For each of the foregoing separate and distinct reasons, this case be dismissed

with prejudice.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **May 22, 2014**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 8th day of May, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE